Lindley and DeJoseph, JJ.
(dissenting). We respectfully dissent because we disagree with the conclusion of the majority, *1488 quoting Matter of State of New York v Donald DD. (24 NY3d 174, 188 [2014]), that respondents’ expert created “ ‘[a] detailed psychological portrait of [petitioner that] allow [ed] [her] to determine the level of control the [petitioner] has over his sexual conduct.’ ” We therefore vote to affirm.
In 2014, the Court of Appeals wrote that sufficient evidence of a serious difficulty controlling sex-offending conduct may not consist of such “meager material” as that a sex offender did not make efforts to avoid arrest and re-incarceration, but instead must include a “detailed psychological portrait of a sex offender [to] allow an expert to determine the level of control the offender has over his sexual conduct” (id.). Shortly thereafter, the First Department in Matter of State of New York v Frank P. (126 AD3d 150 [2015]), relying on Donald DD., held that the evidence on which the State experts relied was insufficient to establish by clear and convincing evidence that respondent has or will have serious difficulty controlling his behavior, where “respondent spent 33 consecutive years in prison and there is no evidence that he engaged in any inappropriate sexual behavior during that prolonged period to suggest that he had serious difficulty controlling his behavior in such an environment. Instead, [respondent] voluntarily attended anger management and sex offender treatment programs while in prison” (id. at 163).
Here, during respondents’ direct examination of their expert, Dr. Allison T. Prince, she was specifically asked to provide her opinion on why petitioner has serious difficulty controlling his behavior. In response, she listed only four factors: (1) the chronic nature of the offenses, including the fact that they started at a young age; (2) the fact that he offended despite the likelihood of being caught; (3) his previous criminal sanctions, including incarceration; and (4) his history of offending in a secure environment.
In our view, those factors are insufficient to establish by clear and convincing evidence “that [petitioner] had ‘serious difficulty in controlling’ his sexual misconduct within the meaning of section 10.03 (i)” (Donald DD., 24 NY3d at 187). With respect to the second and third factors, as we previously noted, the Court of Appeals made it clear that evidence of serious difficulty cannot consist of such “meager material” as a failure to make efforts to avoid arrest and re-incarceration (id. at 188). As for the fourth factor, although there is some evidence that petitioner “sexually acted out” while imprisoned in the mid-1980s, the record is also clear that from 2000 to the present petitioner has not had any instances of sexual misconduct and *1489 has not engaged in any “proxy” behaviors — behaviors that mimic aspects of a person’s sexual offenses — while in a secure facility. The events contemplated by the fourth factor occurred approximately 30 years ago, well prior to the offenses that led to petitioner’s current confinement. Those instances can hardly support the conclusion “that petitioner currently suffers from a ‘mental abnormality’ ” (Matter of Groves v State of New York, 124 AD3d 1213, 1214 [2015] [emphasis added]).
As for the first factor, there is no dispute that petitioner has a lengthy criminal history of sex offenses dating back to the 1970s. These offenses, in Dr. Prince’s view, followed a “script” or a pattern in which petitioner would form a relationship with a prostitute, stalk her, fantasize about the attack, plan the attack, and then complete the attack. Nevertheless, Dr. Prince did not provide a connection between the number of victims and the “serious difficulty” standard. In any event, while in Donald DD. there were certainly fewer victims and fewer crimes than here, in Frank P., the respondent “was convicted of raping and sodomizing four women in their homes, and accused of raping seven more women” (Frank P., 126 AD3d at 151). On those facts, the First Department, relying heavily on Donald DD., determined that “the inferences that logically flow from [the] evidence [were] insufficient to support a determination, under the clear and convincing evidence standard, that respondent has or will have serious difficulty controlling his sexual behavior” (id. at 163). Simply put, as in Frank P., it is impossible to conclude on this record whether the number of victims means that petitioner had “difficulty in controlling his urges or simply decided to gratify them” (Donald DD., 24 NY3d at 188).
Although the majority is correct that respondents “elicited significant additional information concerning petitioner’s predispositions from Dr. Prince throughout the trial,” we disagree with the majority’s view that Dr. Prince “testified that such information factored into her . . . opinion that petitioner had the requisite serious difficulty in controlling his sexual conduct.” The issue of “serious difficulty” was not the only issue at the hearing and therefore not the only issue discussed by Dr. Prince; she provided testimony on the “mental abnormality” question along with testimony on the issue of whether petitioner is currently a dangerous sex offender requiring confinement. In our view, it is entirely speculative to conclude that the additional information provided by Dr. Prince was intended to address the serious difficulty question, and she simply failed to provide the connection suggested by the majority.
*1490 Finally, we note our disagreement with the majority’s view of the record and the testimony of Dr. Prince that petitioner never completed a sex offender treatment program and has become stagnant in his current programs. Dr. Prince testified that one of petitioner’s treatment providers told her that petitioner had “ ‘maxed out’ of the treatment opportunities at the facility, because he . . . engaged in . . . mostly all of the groups that they offer.” Moreover, the record is clear that petitioner is currently in phase III of his treatment and has been recommended for the final phase of treatment and apparently could proceed to phase IV if he took a third PPG test and a polygraph. In the four-phase treatment program provided by Office of Mental Health (OMH) secure facilities, “[p]hase III . . . requires participants to meet goals that demonstrate the ability to utilize skills and insights acquired earlier in the program. Upon completing these goals and maintaining them for six months or longer, participants may enter phase IV, which addresses individualized discharge planning for the transition back to the community. As of October 2011, approximately 270 residents of [OMH secure facilities] were participating in the OMH program; fewer than 30 had reached phase III and only one . . . was in phase IV’ (Matter of Charles A. v State of New York, 101 AD3d 1535, 1537 [2012]). In our view, petitioner’s presence in phase III shows that he has made progress and has some level of understanding of his prior offenses and actions, and the so-called stagnancy of petitioner’s treatment was not completely explained by Dr. Prince, who simply concluded that “[y]ou can still glean additional information from attending these [therapy] groups again.” Present — Smith, J.P., Cami, Lindley, Valentino and DeJoseph, JJ.